EBERHARDT v. HARKLESS et al.

(Circuit Court, W. D. Missouri, W. D.  May 12, 1902.)

No. 2,472.

**1. ATTORNEYS AT LAW — LIABILITY FOR NEGLIGENCE — INAPPROPRIATE ACTION FOR BREACH OF CONTRACT.**

A verbal contract, made by agents of a corporation in its behalf, to employ plaintiff either so long as the agents should remain with the company or so long as the company should continue in business, was not one for such a definite term that attorneys employed by plaintiff to enforce his rights thereunder after his discharge were guilty of 'negligence because they brought an action to recover wages at the contract rate to the time of its commencement, instead of one to recover full damages for its breach.

**2. SAME—ACTION FOR DAMAGES.**

Plaintiff sued to recover damages alleged to have been sustained through the negligence of defendants as attorneys. The petition alleged that plaintiff had a contract with a corporation for his employment at stated wages during his natural life; that on his discharge he employed defendants to prosecute his claim against the company; that through negligence or gross ignorance of the law they brought an action to recover wages under the contract to that date, and recovered, but that such recovery operated as a bar to any subsequent action, because the damages for breach of the contract were indivisible, and that a second suit brought by defendants failed for that reason. Plaintiff's testimony on the stand failed to support his allegation as to the contract. He stated that certain agents representing the corporation agreed to employ him so long as they should be with the company, and again that they agreed that he should be employed so long as the company was in business. Neither did his evidence sustain the claim that his second suit failed because of the former recovery, but the record showed that it was dismissed because of his failure to comply with an order requiring him to give security for costs, after he had been granted leave to amend his petition. *Held* that, assuming that plaintiff stated his case to defendants in accordance with his testimony, they were not negligent in proceeding as they did, and that plaintiff's evidence as a whole showed no ground of recovery which justified the court in submitting the case to the jury.

At Law.  On motion for new trial.

J. A. Smith, for plaintiff.

Scarritt, Griffith & Jones, for defendants.

PHILIPS, District Judge.  At the trial of this case to a jury the court directed a verdict for the defendants on the plaintiff's testimony. The only question to be determined on this motion is as to whether that direction was correct, regardless of any reasons assigned by the court in passing upon the demurrer to the evidence.

The theory of the plaintiff's petition is that he had a contract with the Missouri & Kansas Telephone Company, through its agents and representatives, in settlement of a claim for personal injury received by him while in the employ of the company; the substance of which is that, in addition to the sum of $150, paid him on said settlement, for which he gave a receipt in full, there was the further consideration that the company was thereafter to give him employment during his natural life at a compensation of $60 per month, and that he employed the defendants as his attorneys to compel by suit said company to keep said contract, alleging that it had discharged him without cause, and failed and refused to give him employment; that thereafter the defendants, as attorneys at law, brought suit upon such contract in a justice court for the recovery of one month's pay, then due him if the contract had been kept, and that he recovered judgment therein for said period, from which said judgment the defendant company appealed to the circuit court of Jackson county, where the company dismissed its appeal, leaving the judgment of the justice court in force, and which judgment the defendant company afterwards paid off and satisfied; that during the pendency of said appeal the defendants, as his attorneys, brought another suit in the circuit court of Jackson county, Mo., on said contract against said company for the recovery of the monthly payments which had accrued between the time covered by the former suit and the institution of said second suit. To this last action the defendant company appeared and demurred on two stated grounds: First, that the petition did not state facts sufficient to constitute a cause of action; and, second, because of the pendency of another suit between the same parties respecting the same cause of action. This demurrer was sustained, but whether the action of the court was based upon one or the other or upon both of the alleged grounds in the demurrer neither the record nor the evidence in this case discloses. Thereupon the plaintiff took leave to file an amended petition, and, being a nonresident of the state, he was required, by order of the court, to give security for costs. By reason of his failure to give such security, that suit was dismissed by the circuit court. Thereupon the connection of the defendants with the case ceased, and the plaintiff, upon the recommendation of one of the defendants' firm, employed another lawyer in the state of Kansas to institute another suit over there, with which proceeding the defendants had nothing to do.

It is contended by plaintiff that he lost his right of action to recover any further sum from the defendant telephone company for the reason that the contract was indivisible, and that the cause of action thereon could not be split up, and that, when a recovery was had for the one month's pay, it was a bar to any further action; and that this resulted from the negligence and ignorance of the law on the part of the defendants. The petition in this case specially pleads that this principle of law had been announced by the supreme court of the state in the case of Booge v. Railroad Co., 33 Mo. 212, 82 Am. Dec. 160. The facts in that case were that the defendant employed the plaintiff in March, 1858, as a runner or solicitor for freight and passengers from that time until the close of navigation on the Missouri river at

115 F.—52

the price of $125 per month, payable monthly; that the plaintiff entered upon such service, and continued therein until the 19th day of June, 1858, when the defendant wrongfully discharged him, and refused to permit him to perform said contract, notwithstanding his willingness and readiness to do so. The petition further alleged that navigation on said river did not close until December, 1858, and alleged that there was due for his wages under said contract for the months of September, October, and November, $375. The evidence disclosed that the plaintiff had hitherto instituted in the same court an action against the defendant on said contract for breach thereof, and obtained judgment therein for the sum of $250, for wages for the period between the 1st of July and the 1st of September, 1858. The court held that the contract was a unit, and that the plaintiff might have recovered in one suit for the whole term of his contract, and that, having elected to sue for the shorter term, it was a bar to the second action. The action in this case is based upon the theory that the plaintiff had a contract with said telephone company to pay him at the rate of $60 per month during his lifetime, or as long as he was able and willing to work. The question to be decided here is, what was the statement made by the plaintiff of his cause of action to the defendants at the time of their employment as counsel, in order to determine whether or not they were culpable of such negligence and ignorance as to place upon them, as attorneys at law, a liability for mismanagement and misdirection of their client's case? In other words, was the case presented by the plaintiff to his attorneys of such character as to leave no reasonable doubt in their minds, as intelligent lawyers, as to whether or not he had a contract that was to run during his life, or for other certain definite period, to bring his case within the rule of the decision above mentioned? A reference to the plaintiff's testimony in this case will show that he had no such contract with said company. After his alleged injury, and in settlement thereof, the following instrument of writing was executed between the parties:

"Kansas City, Mo., Nov. 3rd, 1894.

"Missouri & Kansas Telephone Co., to Charles Eberhardt and Wife, Dr.
"1894.                              Kansas City, Mo.

"Voucher No. 8.

"In full of all claims by us or either of us, on account of damages or injury to the person of Charles Eberhardt, arising from the accidental falling of a ladder on or about the 19th day of August, 1892, at or near the premises known as the baggage room of the Union Depot Company in the city of Kansas City, Missouri. Said ladder having been borrowed and placed in position by said Eberhardt to enable him to take down some old wire which in his judgment was necessary to be done......................... $150 00

"Examined by executive committee, and approved for $100.00.

"Correct. W. W. Smith, Superintendent.

"Examined and found correct. W. H. Ballard, Auditor.

"Approved. A. Burt, General Manager.

"Notice. The person signing this voucher is notified to see that payment is received before or at the time of signing. If this voucher is signed without payment, it is done at the signer's own risk, and the company will not be responsible for any claim for damages thereafter.

"Received of the Missouri & Kansas Telephone Company, subject to the above notice, $150.00 in full of the above account.

"Charles Eberhardt.

"Mrs. Maggie Eberhardt, His Wife.

"Kansas City, Missouri, Nov. 12th, 1894."

Waiving the question raised by defendants' counsel as to whether this was of the character of such a receipt as that its terms could not be varied by showing an additional consideration without a reformation of the instrument, the plaintiff's testimony is that in stating the additional arrangement or consideration to his counsel he talked with the agent of the company about paying his doctor's bill and for medicines, and that the agent told him he could not pay his doctor's bill, or pay out any money, without his signing a release, and that the agent agreed to pay his doctor's bill if he would give them a release; and that he told the agent that, as the company wanted a release, he would have to ask more than his doctor's bill; that he was a cripple, and probably would be so for life; that he had a family to support, and wanted employment; and then the agent or agents said that "as long as they were with the company they would have a place for me. I told them that the way things looked at that time that Mr. Smith [who was the superintendent of the company] wouldn't be with the company much longer, and that as Mr. Burt had just come there, and he didn't know me, and didn't care much about me; and then he [evidently meaning Smith] said, as long as the Missouri & Kansas Telephone Company is in business—doing business—that they would always have work for me to do, and a job that I could do, and that they would put me on inspecting, which was about the best job they had, and that they would put me on as soon as I was able to take it." Further on in his testimony, when speaking of his appeal to the agent of the company for employment, when the agent told him that he had nothing for him to do, he testified as follows: "I told him that I wanted him to do as he had agreed; that I was ready to go to work, and wanted him to keep his part of the contract. I told him that he told me that they would give me work as long as he was with the company." Then, further on, in speaking of his subsequent interview with said Burt, the plaintiff testified that "he said that they would give me work as long as they remained a company and were doing business." Further on he says, "I was to receive sixty dollars a month, inspecting, as long as the company was in business." The charter of said telephone company, in evidence, shows that under the then existing franchise it would expire in 1902, and at the time of this alleged contract would have about 10 or 12 years to run.

From the foregoing extracts from plaintiff's testimony he stated his contract in two different ways. In the first place, he said that Smith and Burt said "that as long as they were with the company they would have a place for me." If that was the contract as he stated it to his counsel, it was not a contract for any definite or fixed period of time, but was a contract continuing only so long as Smith and Burt were with the company. Their assurance, according to this statement, was simply that they would have a place for the plaintiff so long as they were with the company. As they were mere employés of the company, and there is nothing to show that they had a life estate, the presumption would be that they were subject to the incidents of a discharge from the service of the company, or were liable to quit its employment at any time. This is evidenced by plaintiff's own statement "that the way things looked at that time that Mr. Smith wouldn't be

with the company much longer." Such a contract was so dependent and uncertain in its duration that assuredly no lawyer would conclude that a recovery could be had thereon based upon a life tenure in the plaintiff. Then, taking the other horn of the dilemma, based upon his own statement that they would give him employment so long as said company was in business, it was a contract made with the then existing company, whose life depended upon the duration of its then charter. It had no claim to existence except as based upon its charter, which limited its life from its inception, in 1882, to 20 years. The cause of action alleged in the petition is not based upon this theory, but upon the existence of the life of the plaintiff. And at the hearing the plaintiff introduced the tables, recognized by established insurance companies, to show the probabilities of the length of his life, and upon that theory asks for judgment for $20,000. Aside, however, from the legal duration of the telephone company's life, it was liable to go out of business at any time. Its business operations might have proved unsuccessful or undesirable, and its stockholders could have determined at any time to wind up its affairs and go out of business. His contract, therefore, with the company, dependent upon the time it was doing business, was indefinite and uncertain. No court or jury would have been authorized to give him a judgment based upon the theory that the company would continue in business during the residue of its chartered life. Therefore his damages could not be legally measured respecting such future possibility or contingency. And the only safe course for his counsel to have taken in that aspect of the case was to sue for the monthly wages as they accrued. Priest v. Deaver, 22 Mo. App. 276.

Plaintiff's counsel undertook at the hearing to escape from the embarrassment of this situation by offering to show that perhaps in 1899, and after this suit was brought, that said telephone company had, under authority of the statutes of the state respecting business corporations, obtained an extension of its corporate life for a much longer period. The mere fact, however, that it was possible, under the general statutes of the state, for the company at the expiration of its charter to have that charter at some future date extended, could not enlarge the operation of the contract, which the plaintiff's own testimony shows that he had, into a contract for the life of the plaintiff; nor to cover the new life of the company, which did not exist at the time of the contract; and it would be subject to the same incident above indicated of the right and possibility of the company to go out of business at any time at the pleasure of the stockholders. Superadded to all this, the claim set forth in the plaintiff's petition, as the basis of his action, that the second suit brought by the defendants in the circuit court of Jackson county failed on the ground that the demurrer presented therein was sustained on the ground of the pendency of the first suit in the justice court on appeal in the circuit court, where the defendants' attention was called to the ruling of the supreme court in said case of Booge v. Railroad Co., 33 Mo. 212, 82 Am. Dec. 160, and that the defendants, then being advised in the premises, could have saved the defendants' further right of action by dismissing the first suit, is not sustained by the evidence. Neither the record nor

the evidence in the case shows that the state circuit court sustained the demurrer to the second petition filed therein on the second ground mentioned in 'the demurrer of the pendency of another action. It is incredible to infer that so learned and experienced a judge as Judge Henry, who presided over that court at the time, could have sustained the demurrer on the second ground alleged therein, as the supreme court had held in Arthur v. Rickards, 48 Mo. 298, that a demurrer based on the ground of the pendency of another suit between the same parties for the same cause of action does not lie when such fact does not appear on the face of the petition. And such has ever been the understanding of the profession in the state under the code practice. The only inference permissible, therefore, is that, the demurrer was sustained on the first ground,—that the petition was defective in not sufficiently stating facts constituting a cause of action. And this conclusion is confirmed by the fact that leave was granted to the plaintiff to file an amended petition. Neither was there one word of evidence before the court and jury on the hearing of this case that the ruling of the supreme court in said case of Booge v. Railroad Co., or any other like ruling, was discussed or called to the attention of the defendants at that hearing. And the evidence further is that the plaintiff's action in the circuit court was dismissed for the reason that he refused or failed to give security for costs, as required by the court. Who can say what the ruling of the circuit court, had that case proceeded to trial on its merits, would have been respecting the right of the plaintiff to maintain his second action? How can this court assume, or a jury be permitted to ascertain, that the circuit court would have directed a verdict for the defendant, or that under the court's instructions to the jury a verdict might not have been returned in favor of the plaintiff? How could the court, by its instructions, have authorized the jury to find in advance that from a verdict for plaintiff in said cause the defendant would have appealed; and if it had so appealed, what the decision of the supreme court would have been upon the mooted question of the divisibility of the contract? It does seem to me that a verdict for the plaintiff under such state of the case, based upon a contract running for the life of the plaintiff, would have been speculative and conjectural, which no court should permit. Neither is it too much to say that under the statement of what the plaintiff's contract with the agents of the telephone company was, as expressed by him on the witness stand, his attorneys were well justified in the conclusion reached by them on the law of the case that it was conservative to sue for the wages already earned, and from time to time as they accrued. At all events, the questions of law and practice arising on the state of facts as declared by the plaintiff on the witness stand were so debatable that it seems to me it would be an unreasonable and harsh rule for a court to say that an attorney should be liable to his clients for making a mistake respecting his remedy under such circumstances. It extends the rule establishing the liability of attorneys for negligence and ignorance beyond precedent and sound reason.

The motion for new trial is overruled.